

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2003

# Norfleet v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket 02-3881

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Norfleet v. Comm Social Security" (2003). *2003 Decisions.* Paper 526.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/526

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3881

MARY ANN GLENN,
o/b/o
JASON NORFLEET

v.

THE COMMISSIONER OF SOCIAL SECURITY

Jason Norfleet,
Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 02-cv-00526)
District Court Judge:  Honorable William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
May 16, 2003

Before:  RENDELL, SMITH and ALDISERT, Circuit Judges

(Filed May 28, 2003)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Mary Ann Glenn,[1] on behalf of her son Jason Norfleet, appeals the District Court's grant of summary judgment for the Commissioner of Social Security and affirmance of the Commissioner's denial of her claim for child's Supplemental Security Income Benefits. We will affirm.

In January 2000, Glenn filed an application for benefits on behalf of her son under Title XVI of the Social Security Act, 42 U.S.C. § 1381, alleging that Jason had been disabled since December 1999 due to attention deficit hyperactivity disorder ("ADHD"). Benefits were denied initially and on reconsideration. Glenn then requested a hearing before an Administrative Law Judge ("ALJ").

Glenn and Jason arrived at the hearing without counsel. At the opening of the hearing, the ALJ advised Glenn that Jason had a right to counsel because there were legal issues involved. The ALJ further explained that the benefits decision would not be based upon whether Jason had an attorney or not, and that the proceedings were informal and were simply intended to allow the ALJ to gather information that might have a bearing on Jason's application. The ALJ then stated that if Glenn wanted to obtain counsel, it would be necessary to reschedule the hearing. He asked Glenn if she wanted to proceed under these circumstances, and she said yes. R146.

The ALJ then asked Glenn if she had had an opportunity to review the file. Glenn

---

[1]Because Glenn is really the actor in these proceedings, we will treat her as the plaintiff in this discussion.

responded that she had not. The ALJ asked if the file had been made available to her prior to the hearing, to which Glenn had "no audible response." R147. Finally, the ALJ asked if she had any objection to his consideration of any of the material in Jason's file in deciding the case, to which Glenn responded, no. Id.

The ALJ then proceeded with the hearing, first explaining to Glenn that he would be looking at Jason's functioning in five broad areas, then asking her questions about Jason's progress in school, his Individualized Education Plan ("IEP"), speech therapy classes, motor skills, friends, outside activities, personal safety, household tasks, ability to maintain attention, and his reaction to the medication Ritalin. R149-54. Glenn stated that Jason was hyper and would sometimes become angry when he lost at games or was told to do chores, but that he could play games like normal kids, had friends, plays football and basketball, could dress himself and put his things away, loves to draw and write, and had been calmed down by the Ritalin. The ALJ then asked Jason questions about his teacher, his friends, and his activities, and offered Glenn the opportunity to add anything further that she thought relevant.

After the hearing, the ALJ denied benefits. First, the ALJ found that Jason was a minor and had never performed substantial gainful activity. Then, the ALJ considered whether Jason had a disability such that he was entitled to benefits. The ALJ found that Jason's ADHD was a severe impairment, but that Jason's low average intelligence was not a severe impairment. In coming to the conclusion that Jason had low average

3

intelligence, the ALJ credited the most recent IQ score rather than a lower score from an earlier test. The ALJ later explained that the higher IQ score was more reliable because the testing was performed more recently, under the supervision of a highly qualified staff, and the results were more consistent with Jason's current performance in school. A40.

Having found that Jason's ADHD was a severe impairment, the ALJ then evaluated whether Jason's subjective complaints established a totally disabling impairment, whether his impairment met or equaled any of the Listed Impairments, and whether Jason had any marked or extreme limitations in any area of functioning or any impairments that were functionally equivalent to any of the Listed Impairments. The ALJ considered medical evidence including the two intelligence evaluations discussed above and a doctor's diagnosis of ADHD; a report from Jason's first grade teacher that he had some difficulties in reading and math but was working at the early first grade level, had been better able to stay on task after being put on Ritalin, and worked well with others; a Children's Activities Questionnaire indicating that Jason was working below school level and was receiving speech therapy; Jason's current IEP, which indicated that Jason would be participating in the regular general education curriculum with some modifications, that he was well-behaved and enjoyed drawing, but needed to improve his reading skills; and finally, Glenn's testimony and Jason's behavior during the hearing. Taking all of this evidence into consideration, the ALJ determined that Jason was not disabled as defined in the Social Security Act.

Glenn appealed the ALJ's decision to the Appeals Council, which affirmed the decision. Glenn then filed a complaint in the District Court for review of the Commissioner's final determination denying her claim. Both parties filed motions for summary judgment. The District Court granted summary judgment in favor of the Commissioner and affirmed the denial of benefits. Glenn appeals.

The District Court had jurisdiction under 42 U.S.C. § 405(g). We exercise jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

On appeal, Glenn presents three bases for reversal or remand: 1) that her waiver of counsel was not knowing and voluntary, 2) that the ALJ's denial is not supported by substantial evidence, and 3) that the ALJ did not fulfill his duty of fully and fairly developing the record, as he is required to do when the applicant is an unrepresented minor.

We find all three arguments without merit. First, we find that Glenn's waiver of counsel on Jason's behalf was knowing and voluntary. Glenn was notified of Jason's right to counsel in notices mailed to her prior to the hearing and again by the ALJ at the start of the hearing. R27, 33, 146. Her repeated statements in her brief that she never received notice of the right to counsel, of the availability of counsel at a reduced fee, or of the fact that Jason's file was available for review are blatantly contradicted by the record. See id. She was adequately informed of the right and chose not to exercise it. Furthermore, before we will remand for lack of counsel, we require a showing of clear

prejudice or unfairness, see Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979), neither of which Glenn has shown.

Second, Glenn urges us to find that the ALJ's decision was not supported by substantial evidence. Our review of the ALJ's determination is deferential. We determine only whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

Glenn does not challenge the ALJ's enunciation of the proper legal standard, rather she suggests that the evidence does not support the ALJ's determination of no disability. We disagree. As detailed above, the ALJ conducted a thorough hearing, questioning both Glenn and Jason about Jason's behavior, activities, friends, and functioning. The ALJ also thoroughly reviewed the presented medical evidence and school reports. The ALJ's determination that Jason is not disabled is supported by Jason's low average intelligence, his enrollment in regular classes at school, the fact that he is well-behaved and a good worker, his ability to play football, draw, and color, his having a number of friends and interacting appropriately with them, and his ability to concentrate while taking Ritalin. A43-44.

Glenn attacks the ALJ's decision to credit the later, higher IQ score over the earlier, lower one, arguing that the ALJ did not provide any reasoning for his decision. We require an ALJ to "give some indication of the evidence that he rejects and his

6

reasons for discounting the evidence." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). Here, the ALJ did so; his explanation that the higher IQ score was more recent, was administered by a highly qualified staff, and was more consistent with Jason's current performance in school is adequate.

Glenn also argues that the ALJ should have inquired about more medical evidence and/or sent Jason to another doctor for more testing, but she does not provide any indication of what probative evidence the ALJ might have been able to uncover, and therefore cannot demonstrate any prejudice. Absent a clear showing of prejudice, we will not remand. Dobrowolsky, 606 F.2d at 407.

Finally, Glenn argues that the ALJ did not live up to his duty to fully and fairly develop the record. We have disapproved of an ALJ's passivity when faced with an unrepresented claimant. See id. (remanding where ALJ failed to pursue the possibility of claimant's meeting the listing for heart disease where claimant's medical history included hospitalization for "coronary insufficiency" and claimant testified that he had "sharp pains" when moving his arms). Here, however, the ALJ conducted a full hearing and thoroughly reviewed the medical evidence, reports, and testimony. The ALJ asked Glenn and Jason questions about Jason's daily functioning that are very close to the questions Glenn suggests an attorney would have asked. See App. Br. at 31. The ALJ fulfilled his responsibilities; his conduct here was thorough and far from the lackadaisical type of conduct we have previously found to be prejudicial.

Because we find that Glenn knowingly and voluntarily waived the right to counsel, that the ALJ's denial was supported by substantial evidence, and that the ALJ fulfilled his duty to fully and fairly develop the record, we will affirm the District Court's grant of summary judgment in favor of the Commissioner and the denial of benefits.

_____

TO THE CLERK OF COURT:

Please file the foregoing not precedential opinion.

/s/ Marjorie O. Rendell
Circuit Judge